John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Tel.: (858) 209-6941
jnelson@milberg.com

*Attorneys for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| **AMANDA COSTELLO**, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>**LOANDEPOT, INC.**,<br><br>            Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Negligence**<br>2. **Negligence** *per se*<br>3. **Breach of Implied Contract**<br>4. **Invasion of Privacy**<br>5. **Breach of Fiduciary Duty**<br>6. **Violation of the California Unfair Competition Law**<br>7. **Violation of the California Consumer Privacy Act**<br>8. **Violation of the California Consumer Records Act**<br>9. **Declaratory Judgement**<br><br>**DEMAND FOR JURY TRIAL** |

Amanda Costello ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant loanDepot, Inc. ("loanDepot" or "Defendant"), and its present, former, or

future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1.  This class action arises from Defendant's failure to protect highly sensitive data.

2.  Defendant is a nonbank company that provides mortgages and other lending products.[1] Defendant advertises $179 billion in refinanced mortgages, $96 billion in new home purchases, and 200+ locations nationwide.[2]

3.  Upon information and belief, Defendant stores a litany of highly sensitive personal identifiable information ("PII") about its current and former customers. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.  It is unknown for precisely how long the cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former customers' PII.

5.  On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. In short, Defendant's failures placed the Class's PII in a vulnerable position—rendering them easy targets for cybercriminals.

6.  Plaintiff is a Data Breach victim. She brings this class action on behalf of herself, and all others harmed by Defendant's misconduct.

---

[1] *Home Page*, LOANDEPOT, https://www.loandepot.com/ (last visited Feb. 1, 2024).
[2] *Id*.

-2-
CLASS ACTION COMPLAINT

7.     The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former customers' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

8.     Plaintiff, Amanda Costello, is natural person and citizen of Illinois. She resides in Dixon, Illinois where she intends to remain.

9.     Defendant, loanDepot, Inc., is a foreign Stock Corporation incorporated in Delaware and with its principal place of business at 6561 Irvine Center Drive, Irvine, California 92618.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendant are citizens of different states. And there are over 100 putative Class members.

11.     This Court has personal jurisdiction over Defendant because it is headquartered in California, regularly conducts business in California, and has sufficient minimum contacts in California.

12.     Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

***Defendant Collected and Stored the PII of Plaintiff and the Class***

CLASS ACTION COMPLAINT

13.     Defendant is a nonbank company that provides mortgages and other lending products.[3] Defendant advertises $179 billion in refinanced mortgages, $96 billion in new home purchases, and 200+ locations nationwide.[4]

14.     As part of its business, Defendant receives and maintains the PII of thousands of its current and former customers.

15.     After all, Defendant declares that "[t]he personally identifiable information we collect about you may include:"

    a.    "Identifying information, such as your name, age, address, phone number and social security number;"

    b.    "Employment information;"

    c.    "Contact information (such as first and last name, mailing or property address, phone number, email address);"

    d.    "Account access information, such as username and password;"

    e.    "Demographic information (such as date of birth, gender, marital status, ethnicity, race);"

    f.    "Social security, driver's license, passport, and other government identification numbers;"

    g.    "Loan account information (such as loan number);"

    h.    "Bank account and credit/debit card numbers;"

    i.    "Other personal information needed from you to provide real estate-related, loan-related, insurance-related, credit-related, and homeownership-related services to you;"

    j.    "Information for fraud detection and prevention;"

---

[3] *Id.*
[4] *Id.*

k.  "Financial information such as your income, assets and liabilities, as well as information about your savings, investments, insurance and business."[5]

16.  In collecting and maintaining the PII, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their PII.

17.  Under state and federal law, businesses like Defendant have duties to protect its current and former customers' PII and to notify them about breaches.

18.  Defendant recognizes these duties, declaring that in its "Privacy Policy" that:

a.  "loanDepot® values your patronage and protecting your personal information is a priority."[6]

b.  "loanDepot believes in protecting the confidentiality and security of the information we collect about you as a customer, potential customer, former customer, job applicant, or employee."[7]

c.  "We have adopted [] policies and procedures to safeguard the personal information about you in our possession."[8]

d.  "This policy ('Privacy Policy') discloses the information loanDepot and its parent, subsidiary, and affiliate companies (defined in the 'Who we are' section below) collects and

---

[5] *Privacy Policy*, LOANDEPOT, https://www.loandepot.com/privacypolicy (last visited Feb. 1, 2024).
[6] *Id*.
[7] *Id*.
[8] *Id*.

CLASS ACTION COMPLAINT

processes, as well as the choices you can make about the way your information is collected and is used."[9]

e.    "loanDepot takes steps to safeguard your personal and sensitive information through industry standard physical, electronic, and operational policies and practices."[10]

f.    "All data that is considered highly confidential data can only be read or written through defined service access points, the use of which is password-protected."[11]

g.    "The physical security of the data is achieved through a combination of network firewalls and servers with tested operating systems, all housed in a secure facility."[12]

h.    "Access to the system, both physical and electronic, is controlled and sanctioned by a high-ranking manager."[13]

i.    "We have adopted policies and procedures designed to protect your personally identifiable information from unauthorized use or disclosure."[14]

j.    "We have implemented physical, electronic, and procedural safeguards to maintain confidentiality and integrity of the personal information in our possession and to guard against unauthorized access. These include among other things, procedures for controlling access to your files, building security programs and information technology security measures such as

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

the use of passwords, firewalls, virus prevention and use detection software."[15]

k.    "We continue to assess new technology as it becomes available and to upgrade our physical and electronic security systems as appropriate."[16]

l.    "Our policy is to permit employees to access your personal information only if they have a business purpose for using such information, such as administering, providing or developing our products or services."[17]

m.    "Our policy, which governs the conduct of all of our employees, requires all employees to safeguard personally identifiable information about the consumers and customers we serve or have served in the past."[18]

***Defendant's Data Breach***

19.    On January 8, 2024, Defendant reported the Data Breach.[19]

20.    Two weeks later, Defendant explained that "the Company has determined that an unauthorized third party gained access to sensitive personal information of approximately 16.6 million individuals in its systems."[20]

21.    On information and belief, because of Defendant's Data Breach, at least the following types of PII were compromised:

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *loanDepot is experiencing a cyber incident*, LOANDEPOT, https://loandepot.cyberincidentupdate.com/ (last visited Feb. 1, 2024).

[20] *loanDepot Provides Update on Cyber Incident*, LOANDEPOT (Jan. 22, 2024) https://media.loandepot.com/news-releases/press-release-details/2024/loanDepot-Provides-Update-on-Cyber-Incident/default.aspx.

CLASS ACTION COMPLAINT

a.    Identifying information, such as name, age, address, phone number and social security number;

b.    Employment information;

c.    Contact information (such as first and last name, mailing or property address, phone number, email address);

d.    Account access information, such as username and password;

e.    Demographic information (such as date of birth, gender, marital status, ethnicity, race);

f.    Social security, driver's license, passport, and other government identification numbers;

g.    Loan account information (such as loan number);

h.    Bank account and credit/debit card numbers;

i.    Other personal information needed to provide real estate-related, loan-related, insurance-related, credit-related, and homeownership-related services;

j.    Information for fraud detection and prevention; and

k.    Financial information such as income, assets and liabilities, as well as information about savings, investments, insurance and business.

22.    In total, Defendant injured at least 16.6 million persons—via the exposure of their PII—in the Data Breach. Upon information and belief, these 16.6 million persons include its current and former customers.

23.    And yet, Defendant has not provided notice to its Data Breach victims.

24.    Thus, Defendant has kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

25.    Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its

failure to prevent the Data Breach and stop cybercriminals from accessing the PII. And thus, Defendant caused widespread injury and monetary damages.

26. On information and belief, Defendant failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures.

27. Defendant has done little to remedy its Data Breach. True, Defendant has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that Defendant inflicted upon them.

28. Because of Defendant's Data Breach, the sensitive PII of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

29. Upon information and belief, the cybercriminals in question are particularly sophisticated. After all, cybercriminals defeated the relevant data security systems and gained actual access to sensitive data.

30. And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[21]

31. Thus, on information and belief, Plaintiff's and the Class's stolen PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

---

[21] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

32.     Moreover, this Data Breach is merely part and parcel of Defendant's *pattern* of negligent data security.

33.     After all, in April 2023, Defendant reported a *different* Data Breach whereby:

> a.     "On August 2, 2022, loanDepot was targeted with a phishing attack that sent malicious emails to 215 employees."[22]
>
> b.     "The phishing attack leveraged the encrypted email platform Zix, which prevented loanDepot's email security controls from detecting and stopping the malicious emails before they reached the employees."[23]
>
> c.     "Ultimately, four employees opened the emails and provided their Microsoft Office 365 credentials."[24]
>
> d.     "[T]he threat actors subsequently leveraged a legacy authentication protocol to bypass the MFA controls and obtained access to the four accounts."[25]

### Plaintiff's Experiences and Injuries

34.     Plaintiff Amanda Costello is a customer of Defendant—having received a home loan in 2021.

35.     Thus, Defendant obtained and maintained Plaintiff's PII.

36.     As a result, Plaintiff was injured by Defendant's Data Breach.

---

[22] *Data Security Event*, DEPT JUSTICE NEW HAMPSHIRE (April 24, 2023) https://www.doj.nh.gov/consumer/security-breaches/documents/loandepot-20230424.pdf
[23] *Id.*
[24] *Id.*
[25] *Id.*

37.     As a condition of her receiving a home loan with Defendant, Plaintiff provided Defendant with her PII. Defendant used that PII to facilitate its provision of its products and services and to collect payment.

38.     Plaintiff provided her PII to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

39.     Plaintiff reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of PII.

40.     Plaintiff does not recall ever learning that her information was compromised in a data breach incident—other than the breach at issue here.

41.     On or around January 10, 2024, Plaintiff tried to access Defendant's website to obtain necessary tax documents.

42.     Defendant had previously represented that such documents would be available.

43.     However, Plaintiff was unable to obtain her necessary tax documents because Defendant's website was nonfunctional due to Defendant's Data Breach.

44.     Thus, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

45.     Thus, upon information and belief, through its Data Breach, Defendant compromised Plaintiff's:

a.     Identifying information, such as name, age, address, phone number and social security number;

b.     Employment information;

c.     Contact information (such as first and last name, mailing or property address, phone number, email address);

d.   Account access information, such as username and password;

e.   Demographic information (such as date of birth, gender, marital status, ethnicity, race);

f.   Social security, driver's license, passport, and other government identification numbers;

g.   Loan account information (such as loan number);

h.   Bank account and credit/debit card numbers;

i.   Other personal information needed to provide real estate-related, loan-related, insurance-related, credit-related, and homeownership-related services;

j.   Information for fraud detection and prevention; and

k.   Financial information such as income, assets and liabilities, as well as information about savings, investments, insurance and business.

46.   Plaintiff has spent—and will continue to spend—significant time and effort monitoring her accounts to protect herself from identity theft. After all, Defendant directed Plaintiff to take those steps in its breach notice.

47.   And in the aftermath of the Data Breach, Plaintiff has suffered from a dramatic spike in spam and scam phone calls.

48.   Plaintiff fears for her personal financial security and worries about what information was exposed in the Data Breach.

49.   Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

50.     Plaintiff suffered actual injury from the exposure and theft of her PII—which violates her rights to privacy.

51.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

52.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII right in the hands of criminals.

53.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

54.     Today, Plaintiff has a continuing interest in ensuring that her PII—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

55.     Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

    a.     loss of the opportunity to control how their PII is used;

    b.     diminution in value of their PII;

    c.     compromise and continuing publication of their PII;

    d.     out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

    e.     lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f.      delay in receipt of tax refund monies;

g.      unauthorized use of their stolen PII; and

h.      continued risk to their PII—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII.

56.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

57.    The value of Plaintiff and Class's PII on the black market is considerable. Stolen PII trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"— further exposing the information.

58.    It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

59.    One way that criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—first the stolen PII, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

60.    The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

61.    In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam

telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

62.     Defendant disclosed the PII of Plaintiff and Class members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

63.     Defendant's failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

### *Defendant Knew—Or Should Have Known—of the Risk of a Data Breach*

64.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

65.     In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[26]

66.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to

---

[26] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.

CLASS ACTION COMPLAINT

regain access to their data quickly."[27]

67.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

68.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

69.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[28]  The FTC declared that, *inter alia*, businesses must:

  a.     protect the personal customer information that they keep;

  b.     properly dispose of personal information that is no longer needed;

  c.     encrypt information stored on computer networks;

  d.     understand their network's vulnerabilities; and

  e.     implement policies to correct security problems.

70.     The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

---

[27] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[28] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

71.     Furthermore, the FTC explains that companies must:

a.      not maintain information longer than is needed to authorize a transaction;

b.      limit access to sensitive data;

c.      require complex passwords to be used on networks;

d.      use industry-tested methods for security;

e.      monitor for suspicious activity on the network; and

f.      verify that third-party service providers use reasonable security measures.

72.     The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

73.     In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former customers' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

74.     Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti- malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

75.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

76.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

77.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

**CLASS ACTION ALLEGATIONS**

78.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII was compromised in the Data Breach disclosed by loanDepot in January 2024, including all those individuals who received notice of the breach.

79.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

80.     Plaintiff reserves the right to amend the class definition.

81.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

82.     <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

83.     <u>Numerosity</u>. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least 16.6 million members.

84.     <u>Typicality</u>. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

85.     <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

86.     <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

        a.     if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

b.      if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.      if Defendant were negligent in maintaining, protecting, and securing PII;

d.      if Defendant breached contract promises to safeguard Plaintiff and the Class's PII;

e.      if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.      if Defendant's Breach Notice was reasonable;

g.      if the Data Breach caused Plaintiff and the Class injuries;

h.      what the proper damages measure is; and

i.      if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

87.     <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

# FIRST CAUSE OF ACTION
## Negligence
### (On Behalf of Plaintiff and the Class)

88.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

89.     Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

90.     Defendant owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

91.     Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

92.     Defendant owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class members' PII.

93.     Defendant owed—to Plaintiff and Class members—at least the following duties to:

        a.     exercise reasonable care in handling and using the PII in its care and custody;

        b.     implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c.      promptly detect attempts at unauthorized access;

d.      notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII.

94.     Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

95.     Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

96.     Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

97.     Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

98.     The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII —whether by malware or otherwise.

99.     PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

100.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

101.    Defendant breached these duties as evidenced by the Data Breach.

102.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII by:

      a.    disclosing and providing access to this information to third parties and

      b.    failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

103.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

104.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

105.    Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

106.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

107.   And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

108.   Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

109.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

110.   Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

111.   Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class members' sensitive PII.

112.   Defendant breached its respective duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

113.   Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

114.   The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

115.   But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class members would not have been injured.

116.   The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

117.   Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

118.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## THIRD CAUSE OF ACTION
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

119.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

120.   Plaintiff and Class members were required to provide their PII to Defendant as a condition of receiving services and/or products provided by Defendant. Plaintiff and Class members provided their PII to Defendant or its third-party agents in exchange for Defendant's services and/or products.

121.   Plaintiff and Class members reasonably understood that a portion of the funds they paid Defendant would be used to pay for adequate cybersecurity measures.

122.   Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

123.   Plaintiff and the Class members accepted Defendant's offers by disclosing their PII to Defendant or its third-party agents in exchange for services and/or products.

124.   In turn, and through internal policies, Defendant agreed to protect and not disclose the PII to unauthorized persons.

125.   In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's PII.

126.   Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

127. After all, Plaintiff and Class members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

128. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

129. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

130. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

131. Defendant materially breached the contracts it entered with Plaintiff and Class members by:

    a.    failing to safeguard their information;

    b.    failing to notify them promptly of the intrusion into its computer systems that compromised such information.

    c.    failing to comply with industry standards;

    d.    failing to comply with the legal obligations necessarily incorporated into the agreements; and

    e.    failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

132. In these and other ways, Defendant violated its duty of good faith and fair dealing.

133.   Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries (as detailed *supra*).

134.   And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

135.   Plaintiff and Class members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**FOURTH CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

136.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

137.   Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

138.   Defendant owed a duty to its current and former customers, including Plaintiff and the Class, to keep this information confidential.

139.   The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' PII is highly offensive to a reasonable person.

140.   The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

141.   The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their

private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

142.   Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

143.   Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

144.   Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

145.   As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

146.   And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

147.   Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with their inadequate cybersecurity system and policies.

148.   Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

149.   In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the

costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## FIFTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

150.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

151.   Given the relationship between Defendant and Plaintiff and Class members, where Defendant became guardian of Plaintiff's and Class members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

152.   Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII.

153.   Because of the highly sensitive nature of the PII, Plaintiff and Class members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known the reality of Defendant's inadequate data security practices.

154.   Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII.

155.   Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

156.   As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### SIXTH CAUSE OF ACTION
**Violation of California's Unfair Competition Law (UCL)**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

157.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

158.   Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

159.   Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"), and other state data security laws.

160.   Defendant stored the PII of Plaintiff and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff's and the Class's PII secure to prevent the loss or misuse of that PII.

161.   Defendant failed to disclose to Plaintiff and the Class that their PII was not secure. However, Plaintiff and the Class were entitled to assume, and did assume, that Defendant had secured their PII. At no time were Plaintiff and the Class on notice that their PII was not secure, which Defendant had a duty to disclose.

162.   Defendant also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the Class's nonencrypted and nonredacted PII.

163.   Had Defendant complied with these requirements, Plaintiff and the Class would not have suffered the damages related to the data breach.

164.   Defendant's conduct was unlawful, in that it violated the CCPA.

165.   Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

166.   Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

167.   Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting PII.

168.   Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

169.   Instead, Defendant made the PII of Plaintiff and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was

unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

170.   As a result of those unlawful and unfair business practices, Plaintiff and the Class suffered an injury-in-fact and have lost money or property.

171.   For one, on information and belief, Plaintiff's and the Class's stolen PII has already been published—or will be published imminently—by cybercriminals on the dark web.

172.   The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

173.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

174.   Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

### SEVENTH CAUSE OF ACTION
**Violations of the California Consumer Privacy Act ("CCPA")**
**Cal. Civ. Code § 1798.150**
**(On Behalf of Plaintiff and the Class)**

175.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

176.   Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII of Plaintiff and the Class. As a direct and proximate result, Plaintiff's and the Class's nonencrypted and nonredacted PII was subject to unauthorized access and exfiltration, theft, or disclosure.

177.   Defendant is a "business" under the meaning of Civil Code § 1798.140 because Defendant is a "corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners" that "collects consumers' personal information" and is active "in the State of California" and "had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year." Civil Code § 1798.140(d).

178.   Plaintiff and Class Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold PII, including Plaintiff's and Class members' PII. Plaintiff and Class members have an interest in ensuring that their PII is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

179.   Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If Defendant cannot cure within 30 days—and Plaintiff believes such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

180.   As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

181.   A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

### EIGHTH CAUSE OF ACTION
### Violation of the California Consumer Records Act
### Cal. Civ. Code § 1798.80, *et seq.*
### (On Behalf of Plaintiff and the Class)

182.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

183.   Under the California Consumer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, *or* is reasonably believed to have been, acquired by an unauthorized person." *Id* (emphasis added).

184.   The Data Breach constitutes a "breach of the security system" of Defendant.

185.   An unauthorized person acquired the personal, unencrypted information of Plaintiff and the Class.

186.   Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the Class but waited to notify them. Given the severity of the Data Breach, this is an unreasonable delay.

187.   Defendant's unreasonable delay prevented Plaintiff and the Class from taking appropriate measures from protecting themselves against harm.

188.   Because Plaintiff and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

189.    Plaintiff and the Class are entitled to equitable relief and damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

190.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

191.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

192.    In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

193.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

    b.    Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

    c.    Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

    d.    Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

CLASS ACTION COMPLAINT

194.   The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

195.   If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

196.   And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class members' injuries.

197.   If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

198.   An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

## PRAYER FOR RELIEF

Plaintiff and Class members respectfully request judgment against Defendant and that the Court enter an order:

A.   Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B.   Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.     Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.     Enjoining Defendant from further unfair and/or deceptive practices;

E.     Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.     Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.     Awarding attorneys' fees and costs, as allowed by law;

H.     Awarding prejudgment and post-judgment interest, as provided by law;

I.     Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.     Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Date: February 5, 2024

Respectfully submitted,

By: /s/ *John J. Nelson*
John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel.: (858) 209-6941
jnelson@milberg.com

J. Gerard Stranch, IV (*pro hac vice* forthcoming)
**STRANCH, JENNINGS & GARVEY, PLLC**

223 Rosa L. Parks Avenue, Ste. 200
Nashville, TN 37203
Tel: 615-254-8801
gstranch@stranchlaw.com

*Attorneys for Plaintiff and Proposed Class*

CLASS ACTION COMPLAINT